Victoria L. Nelson, Esq. (NV Bar No. 5436)
Email: vnelson@nelsonhoumand.com
Jacob L. Houmand, Esq. (NV Bar No. 12781
Email: jhoumand@nelsonhoumand.com
NELSON & HOUMAND, P.C.
3900 Paradise Road; Suite U
Las Vegas, Nevada 89169-0903
Telephone:     702/720-3370
Facsimile:     702/720-3371

*Attorneys for Desert Palace, Inc. d/b/a Caesars Palace*

*Electronically Filed On: July 21, 2014*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>BISTRO CENTRAL, LV, LLC,<br><br>Debtor. | Case No.  BK-S-14-14931-ABL<br>Chapter    11<br><br>**MOTION FOR LEAVE TO EXERCISE RECOUPMENT RIGHTS AGAINST BISTRO CENTRAL, LV, LLC**<br><br>Date of Hearing:     *OST Pending*<br>Time of Hearing:     *OST Pending*<br>Place: Courtroom No. 1, Third Floor<br>              Foley Federal Building<br>              300 Las Vegas Blvd., S.<br>              Las Vegas, NV 89101<br><br>Judge: Honorable August B. Landis |

Victoria L. Nelson, Esq. and Jacob L. Houmand, Esq., of the law firm of Nelson & Houmand, P.C., attorneys for Desert Palace, Inc. d/b/a Caesars Palace (referred to herein as "Landlord" or "Creditor"), hereby moves this Court for Leave to Exercise Recoupment Rights Against Bistro Central, LV, LLC (the "Motion").[1]

. . .

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.  The Federal Rules of Civil Procedure will be referred to as "FRCP" and the Federal Rules of Bankruptcy Procedure will be referred to as "FRBP."  The Local Rules of Practice for the United States Bankruptcy Court for the District of Nevada shall be referred to as the "Local Rules".

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89169
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

1    The Motion is based on the following Memorandum of Points and Authorities and the

2    Declaration of Michael Grey in Support of the Motion for Leave To Exercise Recoupment Rights

3    Against Bistro Central, LC, LLC (the "Grey Declaration"), which is filed separately and

4    concurrently with this Court pursuant to Local Rule 9014(c)(2).  The Motion is also based on the

5    pleadings and papers on file herein and any argument that may be entertained at any hearing on

6    the Objection.[2]

7          Dated this 21st day of July, 2014.

8                                              **NELSON & HOUMAND, P.C.**

9

10                                             */s/ Victoria L. Nelson*
                                               Victoria L. Nelson, Esq. (NV Bar No. 5436)
11                                             Jacob L. Houmand, Esq. (NV Bar No. 12781)
                                               3900 Paradise Road; Suite U
12                                             Las Vegas, Nevada 89169-0903
                                               Telephone:   702/720-3370
13                                             Facsimile:   702/720-3371

14
                                               *Attorneys for Desert Palace, Inc. d/b/a Caesars*
15                                             *Palace*

16

17

18

19

20

21

22

23

24

25

26    _____

27    [2] Landlord also requests that the Court take judicial notice of all pleadings filed in the above-
      captioned bankruptcy case pursuant Rule of Evidence 201, incorporated by reference by FRBP
28    9017.

-2-

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Landlord and Bistro Central, LV, LLC (the "<u>Debtor</u>") are parties to a Lease Agreement (defined below) that was executed on or about January 18, 2011.  The terms of the Lease Agreement are straightforward.  In exchange for the ability to utilize certain retail space in the hotel/casino resort complex located at 3570 Las Vegas Boulevard South, Las Vegas, Nevada 89109 currently known as Caesars Palace (the "<u>Hotel Casino</u>") for the operation of a restaurant, the Debtor is required to pay Landlord both a Minimum Rent payment (defined below) and a Percentage Rent payment (defined below) on a monthly basis.  The Lease Agreement also requires the Debtor to prevent the recording of any mechanic's liens against the Hotel Casino for any tenant improvements performed by the Debtor.  The Lease Agreement further provides that the Debtor is required to accept room charges made by patrons of the Hotel Casino at the Debtor's establishment.  Landlord will then reconcile these room charges with any amounts due and owing under the Lease Agreement and remit the remaining balance to the Debtor.

Beginning in the fall of 2011, the Debtor defaulted on numerous obligations owing to contractors performing tenant improvements on the space leased by the Debtor.  These defaults resulted in the recording of mechanics' liens against the Hotel Casino and the commencement of litigation seeking to foreclose on the Hotel Casino.  The most notable of the mechanics' liens litigation involved Shawmut Woodworking & Supply, Inc. d/b/a Shawmut Design and Construction ("<u>Shawmut</u>").  The litigation with Shawmut was resolved through a settlement agreement that required the Debtor to make monthly payments in the amount of Sixty-Six Thousand Six Hundred Sixty-Six and 67/100 dollars ($66,666.67) to Shawmut.  Since April 1, 2014, the Debtor has defaulted under its obligations to remit the required monthly payments to Shawmut, resulting in the acceleration of the remaining balance of Two Hundred Sixty-Six Thousand Three Hundred Twenty-Six Dollars and Sixty-Five Cents ($266,326.65) under the settlement agreement with Shawmut.

Before the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, Landlord exercised its right to terminate the Lease Agreement with the Debtor

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89169
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

based, in part, on the Debtor's default under the agreement with Shawmut. The Debtor's filing of the instant bankruptcy petition has stayed Landlord's ability to exercise the rights and remedies to it under state law by operation of Section 362(a). In order to protect Landlord rights under the Lease Agreement, it now seeks an order confirming that it has the right to exercise its rights based on the Lease Agreement by deducting any amounts due and owing based on the Lease Agreement from room charges incurred by patrons of the Hotel Casino.[3]

## II.    STATEMENT OF FACTS

THE DEBTOR'S LEASE AGREEMENT WITH LANDLORD

1.    Landlord owns and operates the Hotel Casino. *See* Grey Declaration.

2.    The Debtor operates a restaurant in the Hotel Casino.[4] *See* Grey Declaration.

3.    On or about January 18, 2011, the Debtor entered into an agreement with Landlord for the lease of certain retail space in the Hotel Casino (the "Lease Agreement"). A true and correct copy of the Lease Agreement is attached to the Grey Declaration as **Exhibit "1"**.

4.    The Lease Agreement was for the initial term of ten (10) years with a commencement date of January 18, 2011 (the "Lease Term"). *See* Grey Declaration.

5.    Section 3.1 of the Lease Agreement provides that the Debtor agrees to remit a "minimum rent" payment to Landlord on the tenth day of each month of the Lease Term in the amount of One Hundred Thousand Dollars ($100,000). *See* Grey Declaration.

6.    Section 3.1 of the Lease Agreement further provides that the Debtor agrees to remit a "percentage rent" payment to Landlord on the tenth day of each month of the Lease Term that is six percent (6%) of the Debtor's gross sales exceeding Twelve Million Dollars ($12,000,000). *See* Grey Declaration.

7.    Section 3.2 of the Lease Agreement provides that Landlord has the right to deem all charges incurred on behalf of the Debtor the Lease Agreement as "additional rent":

---

[3] Landlord reserves and all rights arising under the Lease Agreement or the applicable laws of the State of Nevada or Federal Law. This includes the right to assert that the Lease Agreement was terminated pre-petition, thereby preventing the Debtor from assuming the Lease Agreement under Section 365.

[4] The restaurant operated by the Debtor is located in the main lobby of the Hotel Casino and is required to remain open 24 hours a day, 7 days a week.

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89169
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

> In addition to the Percentage Rent required by Section 3.1, all other charges and sums payable by Tenant [the Debtor] hereunder shall be deemed to be additional rent ("Additional Rent"), whether or not the same be designated as such, and shall be due and payable within 20 calendars days of invoice, together with appropriate underlying documentation of such charges.

*See* Article III, § 3.2 of the Lease Agreement, attached as Exhibit "1" to the Grey Declaration.

8.    The Lease Agreement contemplated that the Debtor may perform certain tenant improvements to the retail space leased by the Debtor at the Hotel Casino (the "Premises") and provided that Landlord would not be responsible for any mechanics liens recorded against the Hotel Casino on account of such improvements. Specifically, Article IX, Section 9.1 of the Lease Agreement provides that Landlord will not be responsible for any mechanics liens that are recorded against the Hotel Casino:

> **9.1. Payments to Contractors.** [The Debtor] shall promptly pay all costs and charges for labor or materials for any work, repair, maintenance, improvement, alteration or addition provided by or on behalf of [the Debtor], and [the Debtor] shall indemnify and hold Landlord and the Premises free, clear and harmless of and from all liens and claims of liens and all other liability, claims, demands and causes of action that arise by reason of any work, repair, maintenance, improvement, alteration or addition provided by or on behalf of [the Debtor]. If any such lien shall, at any time, be filed, [the Debtor] shall either cause the same to be discharged of record, by payment or bonding, within 20 calendar days after the date Tenant receives notice or is otherwise made aware of such a lien. Nothing contained herein shall imply any consent or agreement on the part of Landlord to subject Landlord's interest in the real property of which the Leased Premises is a part to liability under any mechanics or other lien law.

*See* Section 9.1 of the Lease Agreement, attached as **Exhibit "1"** to the Grey Declaration.

9.    Sections 3.11 and 19.2 of the Lease Agreement requires the Debtor to pay all outstanding tax obligations owing to the State of Nevada. *See* Sections 3.11, 19.2 of the Lease Agreement, attached as **Exhibit "1"** to the Grey Declaration.

10.    Section 5.12 of the Lease Agreement requires the Debtor to pay all outstanding obligations owing to labor unions. *See* Section 5.12 of the Lease Agreement, attached as **Exhibit "1"** to the Grey Declaration.

-5-

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89169
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89169
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

11.     Finally, Section 3.14 of the Lease Agreement allows Landlord to collect and remit payments to the Debtor based on room charges made at the Debtor's restaurant (the "Room Charges"):

> Charges at the Restaurant.  Tenant will accept charges ("Room Charges") made by guests of Landlord for their account with Landlord for food, beverage, and alcoholic beverage service (plus taxes and gratuities related thereto) at the Leased Premises, in accordance with operating procedures for the authorization ("Room Charge Authorization") thereof from time to time established by Landlord for the operation of the restaurants at the Premises and furnished to Tenant.  Tenant shall assume the risk of collection of any charges.  In the event Room Charges are disputed by the guest, Landlord may resolve the dispute and charge back the Room Charge against future payments to Tenant, with the understanding that the dispute must relate to issues with the service at the restaurant or quality of the restaurant meal.  Landlord shall reconcile Room Charges weekly and remit payment to Tenant 10 calendar days thereafter. . . .

*See* Section 3.14 of the Lease Agreement, attached as **Exhibit "1"** to the Grey Declaration.

### THE DEBTOR'S FAILURE TO PAY CERTAIN MECHANICS LIENS AND THE RESULTING SHAWMUT AGREEMENT

12.     On or about March 17, 2011, Shawmut entered into a construction contract with the Debtor to provide certain construction management and consultation services.  *See* Grey Declaration.

13.     On or about November 18, 2011, Shawmut recorded a Notice of Lien, instrument number 201111180001336 in the offices of the County Recorder of Clark County, in the amount of One Million Two Hundred Forty-Eight Thousand Three Hundred Forty-Five and 96/100 Dollars ($1,248,345.96) (the "Shawmut Lien").  *See* Grey Declaration.

14.     On December 22, 2011, Shawmut filed a complaint against the Debtor and Landlord in the District Court for Clark County, Nevada (Case Number A-12-653684-C), seeking to foreclose on the Shawmut Lien (the "Shawmut Litigation").  *See* Grey Declaration.

15.     On August 15, 2013, Shawmut, the Debtor, and Landlord entered into an agreement to resolve the Shawmut Litigation (the "Shawmut Agreement").  *See* Grey Declaration. . . .

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89169
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

16.     The Shawmut Agreement required the Debtor to immediately pay the lump sum amount of Four Hundred Thousand Dollars ($400,000) after the execution of the same.  The Shawmut Agreement also required the Debtor to pay Eight Hundred Thousand Dollars ($800,000) in equal monthly installments over a twelve (12) month period.  If the Debtor did not cure any defaults under the monthly payments within thirty (30) days, Shawmut would have the right to accelerate the entire remaining balance due under the Shawmut Agreement.  *See* Grey Declaration.

17.     Debtor had the right to cure the default up through the eightieth day following the delivery of the initial default notice by Shawmut.  Debtor failed to cure the default before the eightieth day.  Debtor manifested a clear and unequivocal intention not to make the timely cure or to otherwise comply with the Shawmut Agreement. *See* Grey Declaration.

18.     The Shawmut Agreement further provided that Landlord would have the option to cure any arrearages under the Shawmut Agreement beginning on the eightieth day following the delivery of the initial default notice. *See* Grey Declaration.

19.     Finally, the Shawmut Agreement stated that the Debtor would be required to "immediately and voluntarily surrender the leased premises" in the event that Landlord paid any amount due and owing under the Shawmut Agreement after a default by the Debtor. *See* Grey Declaration.

**THE DEBTOR'S FAILURE TO PAY OUTSTANDING SUMS OWING TO THE UNITE HERE HEALTH**

20.     On January 14, 2013, Unite Here Health, formerly the HEREIU Welfare Fund ("UHH"), filed a complaint in the United States District Court for the District of Nevada (Case Number 2:13-cv-00069-GMN-PAL) against the Debtor and Landlord, seeking to recover unpaid union contributions (the "UHH Litigation"). *See* Grey Declaration.

21.     On May 1, 2014, the United States District Court approved a Stipulation and Order for Settlement, to Stay Execution On Judgment and to Stay Prosecution of Case Pending Performance of Stipulation Payment Plan entered into between UHH, the Debtor, and Landlord entered into a (the "UHH Stipulation").  A true and correct copy of the UHH Stipulation is attached to the Grey Declaration as **Exhibit "2"**.

22. The UHH Stipulation established that the amount due and owing to UHH based on unpaid union contributions was Six Hundred Eighty-Nine Thousand Seven Hundred Thirty-Four and 69/100 Dollars ($689,734.69) after the receipt of several lump sum payments by the Debtor (the "UHH Delinquency Amount"). *See* Grey Declaration.

23. The UHH Stipulation provided that the UHH Delinquency Amount would be paid based on weekly payments deducted from room charges held by Landlord for the benefit of the Debtor. The UHH Stipulation, however, stated that this room charge retention policy in favor of UHH would cease upon a bankruptcy filing by the Debtor. *See* UHH Stipulation, ¶ 22(c)(ii), attached to the Grey Declaration as **Exhibit "2"**.

## THE PRE-PETITION TERMINATION OF THE LEASE AGREEMENT BASED ON DEBTOR'S VARIOUS DEFAULTS

24. On or about April 1, 2014, the Debtor defaulted under the Shawmut Agreement by failing to remit the required monthly payments to Shawmut. *See* Grey Declaration.

25. On June 2, 2014, Shawmut sent a Notice of Default and Notice of Acceleration of the amount due and owing under the Shawmut Agreement (the "Shawmut Notice of Default"). The effect of the Shawmut Notice of Default was to accelerate the remaining balance due and owing under the Shawmut Agreement, which is approximately Two Hundred Sixty-Six Thousand Dollars ($266,000). A true and correct copy of the Shawmut Notice of Default is attached to the Grey Declaration as **Exhibit "3"**.

26. On June 10, 2014, Landlord sent the Debtor a Default Notice and Demand for Performance Under the Lease Agreement (the "Notice of Default"). The Notice of Default informed the Debtor that it was in default of its obligations under the Lease Agreement by failing to comply with the following: (1) the Debtor failed to make the required monthly payments under the Shawmut Agreement and to remove the liens as required under the Lease Agreement; (2) the Debtor failed to pay its tax obligations to the State of Nevada; (3) the Debtor failed to pay its obligations to various labor unions; and (4) the Debtor has not indemnified and reimbursed Landlord for the attorneys' fees and costs. A true and correct copy of the Notice of Default is attached to the Grey Declaration as **Exhibit "4"**.

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89169
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

-8-

27.    The Debtor did not comply with the Notice of Default by curing the defaults.

28.    Landlord sent notice to the Debtor that the Lease Agreement was terminated and that the Debtor no longer had any right to remain in possession of the Premises (the "Notice of Termination").

29.    On July 14, 2014, Landlord sent a Notice to Quit and Surrender Premises to the Debtor (the "Notice to Quit").  A true and correct copy of the Notice to Quit is attached to the Grey Declaration as **Exhibit "5"**.

30.    On July 17, 2014, the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code [Docket No. 1]. *See* Grey Declaration.

31.    Landlord now seeks an order confirming that it has the right to exercise any and all recoupment rights under the Lease Agreement including, but limited to, the deduction of the minimum rent, percentage rent, and any additional rent arising under the Lease Agreement. *See* Grey Declaration.

### III.    LEGAL ARGUMENT

A.    **Landlord Is Entitled to Exercise Its Recoupment Rights Against the Debtor By Deducting Amounts Due and Owing Under the Lease Agreement from the Room Charges**

Equitable recoupment is a common law doctrine that is not expressly recognized in the Bankruptcy Code, but is preserved through judicial decisions. *In re Madigan*, 270 B.R. 749 (9th Cir. BAP 2001).  A bankruptcy trustee or debtor-in-possession takes property subject to the rights of recoupment.  *Megafoods Stores, Inc. v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.)*, 60 F.3d 1031, 1035 (3rd Cir. 1995); *see also Reiter v. Cooper*, 507 U.S. 258, 265 n.2 (1993) (observing that courts have allowed the use of recoupment in bankruptcy cases).

The doctrine of recoupment permits the offset of debts, as long as both arose from the same transaction, even though one debt arose prepetition and the other arose post-petition.  The justification for the defensive use of recoupment in bankruptcy is that there is no independent basis for a "debt," and therefore there is no "claim" against estate property. *In re Harmon*, 188 B.R. 421, 425 (BAP 9th Cir. 1995); 11 U.S.C. § 101(12) ("'debt' means liability on a claim").

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89169
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89169
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

1    Since recoupment is neither a claim nor a debt, it is unaffected by either the automatic stay or the

2    debtor's discharge. *Id.; In re TLC Hosp., Inc.* 224 F.3d 1008, 1011 (9th Cir. 2000).

3    The only limitation on the doctrine of recoupment is that the claims must arise from the

4    "same transaction." *TLC Hosp.*, 224 F.3d at 1011-1014. This "same transaction" requirement

5    essentially distinguishes recoupment from "setoff" or "offset," a similar equitable doctrine of debt

6    adjustment, governed by Section 553, which requires the existence of mutual, *prepetition* debts.

7    *In re Madigan*, 270 B.R. at 754 (emphasis in original). There need not have been any express

8    contractual right to withhold payments for the transaction to be a recoupment. *In re Holford*, 896

9    F.2d 176, 178 (5th Cir. 1990). In the case titled *In re B&L Oil Co.*, 782 F.2d 155, 159 (10th Cir.

10   1986), the court stated that application of the "equitable doctrine [of recoupment] should not

11   depend on whether the parties expressly anticipated the problem," and allowed recoupment absent

12   express contractual permission. *Id.*

13   The United States Supreme Court has stated that "'[t]ransaction' is a word of flexible

14   meaning. It may comprehend a series of many occurrences, depending not so much upon the

15   immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton*

16   *Exchange*, 270 U.S. 593 (1926); *see also Albright v. Gates,* 362 F.2d 928, 929 (9th Cir. 1966) ("In

17   deciding what is a transaction, we take note that the term gets an increasingly liberal

18   construction."). In determining whether two debts arose from the same transaction, the Ninth

19   Circuit will apply what is known as the "Logical Relationship" test. The test is based on FRCP

20   13(a), and provides that:

21           A logical relationship exists when the counterclaim arises from the
             same aggregate set of operative facts as the initial claim, in that the
22           same operative facts serve as the basis of both claims or the
             aggregate core of facts upon which the claim rests activates
23           additional legal rights otherwise dormant in the defendant. *In re*
             *Lazar*, 237 F.3d 967 (9th Cir. 2001).
24

25   The seminal case addressing the doctrine of recoupment in the Ninth Circuit is *In re TLC*

26   *Hosp., Inc.* 224 F.3d 1008, 1011 (9th Cir. 2000). In *TLC*, the debtor was a Medicare provider

27   under contract with the U.S. Dept. of Health and Human Services ("HHS"). The court allowed

28   HHS to recoup pre-petition Medicare overpayments from post-petition Medicare estimated

-10-

payments. The court examined the terms of the Medicare provider agreement and its statutory and regulatory underpinnings. It concluded that the Medicare system, which contemplated the making of estimated payments by HHS, and post-audit adjustments to reimburse HHS for overpayments, did constitute a single transaction for purposes of recoupment even though the separate components of the transaction occurred at different times. *TLC Hospitals*, 24 F.3d at 1012. The Ninth Circuit reasoned that "although the 'logical relationship' concept is not to be applied so loosely that multiple occurrences in any continuous commercial relationship would constitute one transaction, we conclude that the distinctive Medicare system of estimated payments and later adjustments does qualify as a single transaction for purposes of recoupment." *Id.* at 1012.

Finally, Courts have held that the doctrine of recoupment applies even in situations where a lease agreement has been rejected. *See In re Flagstaff Realty Assocs.*, 60 F.3d 1031 (3rd Cir. 1995) (holding that rejection of lease agreement did not alter continuing vitality of lease terms affecting rent amount, and thus, debtor was not relieved of obligation to accept reduced rent based on repairs performed by tenant.).

In the instant case, the doctrine of recoupment allows Landlord to deduct any amounts owing based on the Lease Agreement including, but not limited to, the minimum rent, percentage rent, or additional rent including, but not limited to, the monies the Landlord may be required to pay pursuant to terms of the Shawmut Agreement. Although the Lease Agreement was terminated prior to the Debtor's bankruptcy filing, this does not alter the fact that all arrearages that the Debtor may owe to Landlord arise out of a single transaction: the Lease Agreement. Accordingly, the Court should grant the Motion and enter an order confirming that Landlord has the right to continue to deduct any and all amounts owing based on the terminated Lease Agreement from Room Charges.

. . .

. . .

. . .

. . .

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89169
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

## IV.    CONCLUSION

For the foregoing reasons, Landlord respectfully requests that the Court enter an Order Confirming that Landlord has the right to exercise its recoupment rights against the Debtor by deducting room charges from any and all future charges under the Lease Agreement.

Dated this 21st day of July, 2014.

**NELSON & HOUMAND, P.C.**

*/s/ Victoria L. Nelson*
Victoria L. Nelson, Esq. (NV Bar No. 5436)
Jacob L. Houmand, Esq. (NV Bar No. 12781)
3900 Paradise Road; Suite U
Las Vegas, Nevada 89169-0903
Telephone:    702/720-3370
Facsimile:    702/720-3371

*Attorneys for Desert Palace, Inc. d/b/a Caesars Palace*

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89169
Telephone: (702) 720-3370
Facsimile: (702) 720-3371

-12-