Victoria L. Nelson, Esq. (NV Bar No. 5436)
Email: vnelson@nelsonhoumand.com
Jacob L. Houmand, Esq. (NV Bar No. 12781)
Email: jhoumand@nelsonhoumand.com
NELSON & HOUMAND, P.C.
3900 Paradise Road; Suite U
Las Vegas, Nevada 89169-0903
Telephone:    702/720-3370
Facsimile:    702/720-3371

*Attorneys for Desert Palace, Inc. d/b/a Caesars Palace*

*Electronically Filed On: July 21, 2014*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re: | Case No. BK-S-14-14931-ABL |
| --- | --- |
| BISTRO CENTRAL, LV, LLC, | Chapter 11 |
| Debtor. | **EX PARTE APPLICATION FOR ORDER SHORTENING TIME ON MOTION FOR LEAVE TO EXERCISE RECOUPMENT RIGHTS AGAINST BISTRO CENTRAL, LV, LLC** |
| | Date of Hearing:    *OST Pending* |
| | Time of Hearing:    *OST Pending* |
| | Place: Courtroom No. 1, Third Floor |
| | Foley Federal Building |
| | 300 Las Vegas Blvd., S. |
| | Las Vegas, NV 89101 |
| | Judge: Honorable August B. Landis |

Victoria L. Nelson, Esq. and Jacob L. Houmand, Esq., of the law firm of Nelson & Houmand, P.C., attorneys for Desert Palace, Inc. d/b/a Caesars Palace (referred to herein as "Landlord" or "Creditor"), hereby and submits this Ex Parte Application for Order Shortening Time to Hear the Motion for Leave to Exercise Recoupment Rights Against Bistro Central, LV, LLC (the "Application").[1]

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. The Federal Rules of Civil Procedure will be referred to as "FRCP" and the Federal Rules of Bankruptcy Procedure will be referred to as "FRBP." The Local Rules of

-1-

1  This Application is made and based upon FRBP 9006 and Local Rule 9006, the following memorandum of points and authorities, the Affidavit of Victoria L. Nelson, Esq. In Support of the Ex Parte Application for Order Shortening Time to Hear the Motion for Leave to Exercise Recoupment Rights Against Bistro Central, LC, LLC (the "Nelson Affidavit"), the Declaration of Michel Grey In Support of the Motion for Leave to Exercise Recoupment Rights Against Bistro Central, LC, LLC (the "Grey Declaration"), and the Attorney Information Sheet, all of which are filed separately and concurrently with the Application pursuant to Local Rule 9014(c)(2).

WHEREFORE, Landlord respectfully requests that this Honorable Court grant this Application and issue an order shortening time to hear the Motion for Leave to Exercise Recoupment Rights Against Bistro Central, LC, LLC (the "Motion") and for such other relief as is just and proper.[2]

Dated this 21st day of July, 2014.

NELSON & HOUMAND, P.C.

/s/ Victoria L. Nelson
Victoria L. Nelson, Esq. (NV Bar No. 5436)
Jacob L. Houmand, Esq. (NV Bar No. 12781)
3900 Paradise Road; Suite U
Las Vegas, Nevada 89169-0903
Telephone:    702/720-3370
Facsimile:    702/720-3371

*Attorneys for Desert Palace, Inc. d/b/a Caesars Palace*

---

Practice for the United States Bankruptcy Court for the District of Nevada shall be referred to as the "Local Rules".

[2] Landlord also requests that the Court take judicial notice of all pleadings filed in the above-referenced bankruptcy case pursuant Rule of Evidence 201, incorporated by reference by Federal Rule of Bankruptcy Procedure 9017.

# I. STATEMENT OF FACTS

**THE DEBTOR'S LEASE AGREEMENT WITH LANDLORD**

1. Landlord owns and operates the Hotel Casino. *See* Grey Declaration.

2. The Debtor operates a restaurant in the Hotel Casino.[3] *See* Grey Declaration.

3. On or about January 18, 2011, the Debtor entered into an agreement with Landlord for the lease of certain retail space in the Hotel Casino (the "Lease Agreement"). A true and correct copy of the Lease Agreement is attached to the Grey Declaration as **Exhibit "1"**.

4. The Lease Agreement was for the initial term of ten (10) years with a commencement date of January 18, 2011 (the "Lease Term"). *See* Grey Declaration.

5. Section 3.1 of the Lease Agreement provides that the Debtor agrees to remit a "minimum rent" payment to Landlord on the tenth day of each month of the Lease Term in the amount of One Hundred Thousand Dollars ($100,000). *See* Grey Declaration.

6. Section 3.1 of the Lease Agreement further provides that the Debtor agrees to remit a "percentage rent" payment to Landlord on the tenth day of each month of the Lease Term that is six percent (6%) of the Debtor's gross sales exceeding Twelve Million Dollars ($12,000,000). *See* Grey Declaration.

7. Section 3.2 of the Lease Agreement provides that Landlord has the right to deem all charges incurred on behalf of the Debtor the Lease Agreement as "additional rent":

> In addition to the Percentage Rent required by Section 3.1, all other charges and sums payable by Tenant [the Debtor] hereunder shall be deemed to be additional rent ("Additional Rent"), whether or not the same be designated as such, and shall be due and payable within 20 calendars days of invoice, together with appropriate underlying documentation of such charges.

*See* Article III, § 3.2 of the Lease Agreement, attached as Exhibit "1" to the Grey Declaration.

8. The Lease Agreement contemplated that the Debtor may perform certain tenant improvements to the retail space leased by the Debtor at the Hotel Casino (the "Premises") and provided that Landlord would not be responsible for any mechanics liens recorded against the

---

[3] The restaurant operated by the Debtor is located in the main lobby of the Hotel Casino and is required to remain open 24 hours a day, 7 days a week.

Hotel Casino on account of such improvements. Specifically, Article IX, Section 9.1 of the Lease Agreement provides that Landlord will not be responsible for any mechanics liens that are recorded against the Hotel Casino:

> **9.1. Payments to Contractors.** [The Debtor] shall promptly pay all costs and charges for labor or materials for any work, repair, maintenance, improvement, alteration or addition provided by or on behalf of [the Debtor], and [the Debtor] shall indemnify and hold Landlord and the Premises free, clear and harmless of and from all liens and claims of liens and all other liability, claims, demands and causes of action that arise by reason of any work, repair, maintenance, improvement, alteration or addition provided by or on behalf of [the Debtor]. If any such lien shall, at any time, be filed, [the Debtor] shall either cause the same to be discharged of record, by payment or bonding, within 20 calendar days after the date Tenant receives notice or is otherwise made aware of such a lien. Nothing contained herein shall imply any consent or agreement on the part of Landlord to subject Landlord's interest in the real property of which the Leased Premises is a part to liability under any mechanics or other lien law.

*See* Section 9.1 of the Lease Agreement, attached as **Exhibit "1"** to the Grey Declaration.

9. Sections 3.11 and 19.2 of the Lease Agreement requires the Debtor to pay all outstanding tax obligations owing to the State of Nevada. *See* Sections 3.11, 19.2 of the Lease Agreement, attached as **Exhibit "1"** to the Grey Declaration.

10. Section 5.12 of the Lease Agreement requires the Debtor to pay all outstanding obligations owing to labor unions. *See* Section 5.12 of the Lease Agreement, attached as **Exhibit "1"** to the Grey Declaration.

11. Finally, Section 3.14 of the Lease Agreement allows Landlord to collect and remit payments to the Debtor based on room charges made at the Debtor's restaurant (the "Room Charges"):

> Charges at the Restaurant. Tenant will accept charges ("Room Charges") made by guests of Landlord for their account with Landlord for food, beverage, and alcoholic beverage service (plus taxes and gratuities related thereto) at the Leased Premises, in accordance with operating procedures for the authorization ("Room Charge Authorization") thereof from time to time established by Landlord for the operation of the restaurants at the Premises and furnished to Tenant. Tenant shall assume the risk of collection of

-4-

any charges. In the event Room Charges are disputed by the guest, Landlord may resolve the dispute and charge back the Room Charge against future payments to Tenant, with the understanding that the dispute must relate to issues with the service at the restaurant or quality of the restaurant meal. Landlord shall reconcile Room Charges weekly and remit payment to Tenant 10 calendar days thereafter. . . .

See Section 3.14 of the Lease Agreement, attached as **Exhibit "1"** to the Grey Declaration.

### THE DEBTOR'S FAILURE TO PAY CERTAIN MECHANICS LIENS AND THE RESULTING SHAWMUT AGREEMENT

12. On or about March 17, 2011, Shawmut entered into a construction contract with the Debtor to provide certain construction management and consultation services. *See* Grey Declaration.

13. On or about November 18, 2011, Shawmut recorded a Notice of Lien, instrument number 201111180001336 in the offices of the County Recorder of Clark County, in the amount of One Million Two Hundred Forty-Eight Thousand Three Hundred Forty-Five and 96/100 Dollars ($1,248,345.96) (the "Shawmut Lien"). *See* Grey Declaration.

14. On December 22, 2011, Shawmut filed a complaint against the Debtor and Landlord in the District Court for Clark County, Nevada (Case Number A-12-653684-C), seeking to foreclose on the Shawmut Lien (the "Shawmut Litigation"). *See* Grey Declaration.

15. On August 15, 2013, Shawmut, the Debtor, and Landlord entered into an agreement to resolve the Shawmut Litigation (the "Shawmut Agreement"). *See* Grey Declaration.

16. The Shawmut Agreement required the Debtor to immediately pay the lump sum amount of Four Hundred Thousand Dollars ($400,000) after the execution of the same. The Shawmut Agreement also required the Debtor to pay Eight Hundred Thousand Dollars ($800,000) in equal monthly installments over a twelve (12) month period. If the Debtor did not cure any defaults under the monthly payments within thirty (30) days, Shawmut would have the right to accelerate the entire remaining balance due under the Shawmut Agreement. *See* Grey Declaration.

. . .

17. Debtor had the right to cure the default up through the eightieth day following the delivery of the initial default notice by Shawmut. Debtor failed to cure the default before the eightieth day. Debtor manifested a clear and unequivocal intention not to make the timely cure or to otherwise comply with the Shawmut Agreement. *See* Grey Declaration.

18. The Shawmut Agreement further provided that Landlord would have the option to cure any arrearages under the Shawmut Agreement beginning on the eightieth day following the delivery of the initial default notice. *See* Grey Declaration.

19. Finally, the Shawmut Agreement stated that the Debtor would be required to "immediately and voluntarily surrender the leased premises" in the event that Landlord paid any amount due and owing under the Shawmut Agreement after a default by the Debtor. *See* Grey Declaration.

**THE DEBTOR'S FAILURE TO PAY OUTSTANDING SUMS OWING TO THE UNITE HERE HEALTH**

20. On January 14, 2013, Unite Here Health, formerly the HEREIU Welfare Fund ("UHH"), filed a complaint in the United States District Court for the District of Nevada (Case Number 2:13-cv-00069-GMN-PAL) against the Debtor and Landlord, seeking to recover unpaid union contributions (the "UHH Litigation"). *See* Grey Declaration.

21. On May 1, 2014, the United States District Court approved a Stipulation and Order for Settlement, to Stay Execution On Judgment and to Stay Prosecution of Case Pending Performance of Stipulation Payment Plan entered into between UHH, the Debtor, and Landlord entered into a (the "UHH Stipulation"). A true and correct copy of the UHH Stipulation is attached to the Grey Declaration as **Exhibit "2"**.

22. The UHH Stipulation established that the amount due and owing to UHH based on unpaid union contributions was Six Hundred Eighty-Nine Thousand Seven Hundred Thirty-Four and 69/100 Dollars ($689,734.69) after the receipt of several lump sum payments by the Debtor (the "UHH Delinquency Amount"). *See* Grey Declaration.

23. The UHH Stipulation provided that the UHH Delinquency Amount would be paid based on weekly payments deducted from room charges held by Landlord for the benefit of the Debtor. The UHH Stipulation, however, stated that this room charge retention policy in favor of

UHH would cease upon a bankruptcy filing by the Debtor. *See* UHH Stipulation, ¶ 22(c)(ii), attached to the Grey Declaration as **Exhibit "2"**.

### THE PRE-PETITION TERMINATION OF THE LEASE AGREEMENT BASED ON DEBTOR'S VARIOUS DEFAULTS

24. On or about April 1, 2014, the Debtor defaulted under the Shawmut Agreement by failing to remit the required monthly payments to Shawmut. *See* Grey Declaration.

25. On June 2, 2014, Shawmut sent a Notice of Default and Notice of Acceleration of the amount due and owing under the Shawmut Agreement (the "Shawmut Notice of Default"). The effect of the Shawmut Notice of Default was to accelerate the remaining balance due and owing under the Shawmut Agreement, which is approximately Two Hundred Sixty-Six Thousand Dollars ($266,000). A true and correct copy of the Shawmut Notice of Default is attached to the Grey Declaration as **Exhibit "3"**.

26. On June 10, 2014, Landlord sent the Debtor a Default Notice and Demand for Performance Under the Lease Agreement (the "Notice of Default"). The Notice of Default informed the Debtor that it was in default of its obligations under the Lease Agreement by failing to comply with the following: (1) the Debtor failed to make the required monthly payments under the Shawmut Agreement and to remove the liens as required under the Lease Agreement; (2) the Debtor failed to pay its tax obligations to the State of Nevada; (3) the Debtor failed to pay its obligations to various labor unions; and (4) the Debtor has not indemnified and reimbursed Landlord for the attorneys' fees and costs. A true and correct copy of the Notice of Default is attached to the Grey Declaration as **Exhibit "4"**.

27. The Debtor did not comply with the Notice of Default by curing the defaults. *See* Grey Declaration.

28. Landlord sent notice to the Debtor that the Lease Agreement was terminated and that the Debtor no longer had any right to remain in possession of the Premises (the "Notice of Termination"). *See* Grey Declaration.

29. On July 14, 2014, Landlord sent a Notice to Quit and Surrender Premises to the Debtor (the "Notice to Quit"). A true and correct copy of the Notice to Quit is attached to the

-7-

Grey Declaration as **Exhibit "5"**.

30. On July 17, 2014, the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code [Docket No. 1]. *See* Grey Declaration.

31. Landlord now seeks an order confirming that it has the right to exercise any and all recoupment rights under the Lease Agreement including, but limited to, the deduction of the minimum rent, percentage rent, and any additional rent arising under the Lease Agreement. *See* Grey Declaration.

32. On July 17, 2014, the Debtor filed various first day motions including, a Motion to Extend the Automatic Stay Pursuant to Sections 105(a) and 362(a) to Co-Debtor (the "Motion to Stay") [Docket No. 10]. The first day motions and the Motion to Stay were sought on an order shortening time. *See* Nelson Affidavit.

33. On July 18, 2014, the Court entered an Order Granting the Motion for Order Shortening Time on the Motion to Extend the Automatic Stay Pursuant to Sections 105(a) and 362(a) to Co-Debtor (the "Motion to Stay OST") [Docket No. 30]. The Motion to Stay OST set the hearing on the Motion to Stay for July 25, 2014, at 1:30 p.m. *See* Nelson Affidavit.

34. Landlord seeks to have the Motion heard on the same date and time as the Motion to Stay because both motions seek relief that are inter-connected. In the event that the automatic stay is not extended to Landlord, the Landlord seeks the authority to recoup any amounts paid under the Shawmut Agreement from the Room Charges. *See* Nelson Affidavit.

## II. LEGAL ARGUMENT

Section 105, Title 11 of the United States Code (the "Bankruptcy Code") allows this Court to issue such orders as are necessary to carry out the provisions of this title. FRBP 9006(c)(1) generally permits a Bankruptcy Court, for cause shown and in its discretion, to reduce the period during which any notice is given in accordance with the Bankruptcy Rules. FRBP 9006(c)(1) provides as follows:

> Except as provided in paragraph (2) of this subdivision, when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without Application or notice order the period reduced.

11 U.S.C. § 105. Local Rule 9006 provides further authority for shortening the time for a hearing. Under Local Rule 9006(b), every Application for an order shortening time must be accompanied by an affidavit stating the reasons for a shortened deadline.

Here, Landlord seeks an order shortening time on the Motion because it is inter-connected with the Motion to Stay, which is currently scheduled for July 25, 2014, at 1:30 p.m. In the event that the relief requested in the Motion to Stay is not granted, Landlord will request the ability to recoup any amounts paid under the Shawmut Agreement, from Room Charges. As a result, it will greatly reduce Chapter 11 administrative and conserve judicial resources if the Motion is heard at the same date and time as the Motion to Stay. *See* Nelson Affidavit. For these reasons, the Court should issue an order shortening time on the Motion.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court issue an order shortening time to hear the Motion for Leave to Exercise Recoupment Rights Against Bistro Central, LC, LLC Pursuant to Federal Rule of Bankruptcy Procedure 9019, and for such other relief as is just and proper.

Dated this 21st day of July, 2014.

**NELSON & HOUMAND, P.C.**

*/s/ Victoria L. Nelson*
Victoria L. Nelson, Esq. (NV Bar No. 5436)
Jacob L. Houmand, Esq. (NV Bar No. 12781)
3900 Paradise Road; Suite U
Las Vegas, Nevada 89169-0903
Telephone:   702/720-3370
Facsimile:    702/720-3371

*Attorneys for Desert Palace, Inc. d/b/a Caesars Palace*