Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
The Schwartz Law Firm, Inc.
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Proposed Attorneys for the Debtor

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | ) Case No.: 14-14931-ABL |
| | ) |
| Bistro Central, LV LLC, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| _____ | ) |

STATE OF NEVADA    )
                                        )    ss:
COUNTY OF CLARK   )

**DECLARATION OF CARL HALVORSON IN SUPPORT OF
BANKRUPTCY FILING AND FIRST DAY MOTIONS**

Carl Halvorson, as Manager of Bistro Central, LV LLC, being duly sworn, deposes and says:

1. I am over the age of 18, mentally competent and make this declaration in support of the voluntary Chapter 11 bankruptcy filing of Bistro Central, LV LLC (the "**Debtor**").

2. On July 17, 2014, (the "**Petition Date**"), the Debtor filed its voluntary petition in this Court for reorganization relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "**Bankruptcy Code**").

3. Debtor Bistro Central, LV LLC operates its business as the Central Michel Richard restaurant located inside the Caesars Palace Hotel and Casino in Las Vegas, Nevada. The Debtor leases the premises for the restaurant from Desert Palace, Inc. d/b/a Caesars Palace Hotel and Casino

("**Caesars**").  The restaurant is a 24-hour, French-American themed restaurant which employs approximately 165 full-time and part-time employees.

4.  Over the past several months, the Debtor's revenues did not enable it to pay all of its debts as they became due, including the Nevada Department of Taxation, who indicated it would shut down the restaurant on July 18, 2014.  As a result of the foregoing and the Debtor's desire to continue its business operations, on the Petition Date, the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.  On July 18, 2014, and July 21, 2014, the Debtor filed the following first day motions for its Chapter 11 case:

a. Application for the Entry of an Order Pursuant to 11 U.S.C. §§ 327(a), 328, 329 and 331 and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure authorizing the employment and retention of The Schwartz Law Firm, Inc. ("**SLF**") as counsel for the Debtor (the "**Retention Application**");

b. Motion for the Entry of an Order under sections 363, 364, 1107 and 1108 of title 11 of the Bankruptcy Code Authorizing the Debtor to (i) Maintain Existing Bank Accounts; (ii) Continue to Use its Existing Business Forms; (iii) Continue to Use Its Existing Cash Management System; and (iv) Continue Using Existing Investment Practices. (the "**Bank Accounts Motion**");

c. Debtor's Motion for the Entry of an Order Granting the Debtor Additional Time Within Which to File Schedules and Statements (the "**Schedules Motion**");

d. Motion for the Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(b)(9) (I) Authorizing the Debtor to Pay, And Establishing Procedures for Treatment of, Claims Arising under the Perishable Agricultural Commodities Act of 1930 and Packers and

Stockyards Act of 1921; and (II) Authorizing and Directing Financial Institutions to Honor, Process and Pay All Payments Related Thereto (the "**PACA/PASA Motion**");

   e. Motion for the Entry of Interim and Final Orders Authorizing, But Not Directing, he Debtor to (i) Pay Certain Prepetition Compensation and Reimbursable Employee Expenses, (ii) Pay and Honor Employee Medical and Other Benefits, and (iii) Continue Employee Wages and Benefits Programs (the "**Employee Wages Motion**");

   f. Motion for an Order (I) Prohibiting Utilities From Altering, Refusing or Discontinuing Services on Account of Pre-Petition Claims and (II) Establishing Procedures for Determining Requests for Additional Adequate Assurance of Payment (the "**Utilities Motion**");

   g. Motion to Extend the Automatic Stay Pursuant to Sections 105(a) and 362(a) to Caesars (the "**Motion to Extend the Stay**");

   h. Motion for an Order Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(b) Authorizing the Debtor to Pay Prepetition Claims of Critical Vendors (the "**Critical Vendors Motion**"); and

   i. Debtor's Emergency Motion Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 1107 and 1108 and Rules 4001(b), 6003 and 6004 of the Federal Rules of Bankruptcy Procedure for Entry of Interim and Final Orders (A)(I) Authorizing the Use of Cash, Including Cash Collateral, (ii) Finding that the Interests of the Prepetition Lender or Any Other Purportedly Secured Party are Adequately Protected, and (III) Granting Related Relief, or (B) Alternatively, Authorizing the Debtor to Surcharge the Prepetition Collateral, and (C) Scheduling Interim and Final Hearings (the "**Cash Collateral Motion**").

**Retention Application**

6. In June 2014, the Debtor retained SLF as its attorneys to prepare the filing of a Chapter 11 petition and the prosecution of its Chapter 11 case.

7. The Debtor selected SLF as its attorneys because of the firm's prepetition experience with, and knowledge of, the Debtor's business, as well as its experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code.

8. At this time, the SLF's continued representation of the Debtor in this bankruptcy case is critical to the success of the Debtor's reorganization because SLF is uniquely familiar with the Debtor's business and legal affairs.

**Bank Accounts Motion**

9. At the time of this bankruptcy, the Debtor maintains six bank accounts, three at Chase Bank and three at Bank of America, which are used to manage cash, receipts and disbursements for the business. The Debtor routinely deposits, withdraws, and otherwise transfers funds to and from these bank accounts. These bank accounts are essential to the continued operation of the Debtor's business. The Bank Accounts Motion seeks authority for the Debtor to (i) maintain its existing bank accounts, (ii) continue to use its existing business forms, (iii) continue to use its existing cash management system, and (iv) continue using existing investment practices.

**Schedules Motion**

10. Due to the emergency nature of the filing of this Chapter 11 case and considering the complexity of the Debtor's financial affairs, the Debtor has not been afforded the opportunity to properly prepare a Chapter 11 filing. As a result, the Debtor requires additional time to assemble the information necessary to complete its schedules and statements, in order to ensure that all schedules

and statements are complete and accurate.  The Schedules Motion requests forty-five (45) days from the Petition Date to complete and file the Debtor's schedules and statements.

**PACA/PASA Motion**

11.     In the ordinary course of the Debtor's business, the Debtor purchases a variety of consumable goods essential for the restaurant's operation.  In many instances, the consumable goods received daily by the Debtor are used in the preparation of the various menu items to be served later that same day.  These consumable goods include among other things, beef, poultry, dairy products, produce and general merchandise purchased from a diverse range of vendors, including agricultural growers.  The Debtor's purchase of certain of these consumable goods likely is subject to the requirements of the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a *et seq*. ("**PACA**") and/or the Packers and Stockyards Act of 1921 as amended, 7 U.S.C. §§ 181 *et seq*. ("**PASA**").  As a result, the Debtor anticipates that a significant number of its vendors may file notices to preserve and assert claims under PACA/PASA.

12.     It is imperative that the Debtor establish procedures for the orderly reconciliation and disposition of PACA Claims to ensure that the supply of fresh produce and related products continues unimpeded.  As such, the Debtor proposes that the Court approve the procedures described in the PACA/PASA Motion, which are designed to allow the Debtor to reconcile and to pay PACA claims arising prior to the Petition Date in an orderly and efficient manner.

**Employee Wages Motion**

13.     As of the Petition Date, the Debtor employed approximately 165 full-time and part-time employees (the "**Employees**").

14.     The Debtor seeks court authority to pay and honor, in the ordinary course of business and in its sole discretion, any pre-petition claims and obligations related to, and to continue to pay and

honor in the ordinary course on a post-petition basis, all of the Employee wages and benefits (as defined in the Employee Wages Motion).  The Debtor also request that the Court (a) authorize and direct financial institutions to receive, process, honor, and pay checks presented for payment and electronic payment requests relating to prepetition employee obligations, and (b) schedule a final hearing to consider approval of the Employee Wages Motion on a final basis.

15. Although the Debtor believes that all Employee Wages and Benefits are vital to the Debtor's business, the Debtor seeks authority to maintain and make payments only on account of those Employee Wages and Benefits that the Debtor believes is necessary to prevent immediate and irreparable harm to the Debtor's business.

**Utilities Motion**

16. The Debtor's utilities consist of accounts with Directv and Century Link, which are needed to provide phone, internet and cable TV service to the restaurant.

17. Telephone, cable, and internet facilities must be provided to the Debtor's business offices in order for the Debtor to continue operating its restaurant business and providing customer service to its clients.  At this time, the Debtor cannot afford the risk of utility providers terminating utility services to any of the Debtor's business offices.  The Utilities Motion requests an order of this Court (i) prohibiting the various utility providers from altering, refusing or discontinuing services or requiring additional deposits or other security on account of the commencement of the Debtor's Chapter 11 Case or any pre-petition claims, (ii) establishing procedures for determining requests for additional adequate assurance of payment, and (iii) granting such other and further relief as is just and proper.

**Motion to Extend Stay**

18.     The Debtor owes approximately $266,326.65 relating to a construction contract with Shawmut Woodworking & Supply Inc. d/b/a Shawmut Design and Construction ("**Shawmut**"), which is secured by a mechanic's lien on the restaurant premises.  Under a certain settlement agreement between the parties, if the Shawmut debt is not paid by the Debtor, Shawmut may require Caesars to pay the debt.  If Caesars is forced to pay the debt to Shawmut, the debt will become a lease obligation, which the Debtor must cure in order to assume its lease with Caesars.

19.     The Debtor's lease and restaurant operations are its most significant assets with which it intends to reorganize.  If Shawmut's secured claim is transformed into a lease obligation, the Debtor's ability to assume its lease and/or reorganize may be severely impacted.  Accordingly, the Debtor respectfully requests that the automatic stay be extended to Caesars with respect to the debt owed to Shawmut, so the Shawmut debt may be restructured through the Debtor's Chapter 11 plan of reorganization.

**Critical Vendors Motion**

20.     As part of its normal restaurant operations, the Debtor relief upon and requires the delivery and performance of various food and beverage vendors who provide critical goods and services to continue the Debtor's business operations.  The Debtor will continue to require the same goods and services during the pendency of its Chapter 11 case.  As a result, the Debtor has post-petition on-going commitments to provide the critical goods and services as its establishment.

21.     As managing member of the Debtor, I believe it is in the best interests of the Debtor's estate and creditors that the Debtor obtain authority to pay the critical vendors in the ordinary course of business, including those invoices that request payment on account of and based upon prepetition activity.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 18th day of July, 2014.

*[signature]*

Carl Halvorson, Manager of
Bistro Central, LV LLC