Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
The Schwartz Law Firm, Inc.
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Proposed Attorneys for the Debtor

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | ) Case No.: 14-14931-ABL |
| | ) |
| Bistro Central, LV LLC, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

STATE OF NEVADA       )
                      )   ss:
COUNTY OF CLARK       )

### SUPPLEMENTAL DECLARATION OF CARL HALVORSON IN SUPPORT OF FIRST DAY MOTIONS

Carl Halvorson, as Manager of Bistro Central, LV LLC, being duly sworn, deposes and says:

1.  I am over the age of 18, mentally competent and make this supplemental declaration in support of the various first day motions filed by Bistro Central, LV LLC (the "**Debtor**").

2.  On July 17, 2014, (the "**Petition Date**"), the Debtor filed its voluntary petition in this Court for reorganization relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "**Bankruptcy Code**").

3. On July 21, 2014, I submitted that certain Declaration in Support of the Debtor's Bankruptcy Filing and First Day Motions (Docket No. 56) (the "**First Declaration**").[1] I now make this supplemental declaration in response to the United States Trustee's Objection to Debtor's First Day Motions (Docket No. 64).

**Critical Vendors Motion**

4. As part of its normal restaurant operations, the Debtor relies upon and requires the delivery and performance of various food and beverage vendors who provide critical goods and services to continue the Debtor's business operations.

<u>Sysco Food Services</u>

5. Sysco Food Services ("**Sysco**") provides a substantial amount of food and beverages the Debtor relies on to operate its business. As part of its normal business operations, the Debtor relies upon and requires the delivery and performance of goods from Sysco, in order to continue its business operations.

6. On July 22, 2014, Sysco contacted me and demanded payment. Sysco also indicated that it will not supply the Debtor with post-petition services without payment of its pre-petition claim or will only deal with the Debtor on COD terms. Accordingly, I believe it is in the best interests of the Debtor and all of its creditors that the Debtor obtain authority to pay Sysco as a critical vendor in the ordinary course of business, including those invoices that request payment on account of and based upon prepetition activity. Without doing so, there is a substantial risk that Sysco will either fail to supply the Debtor post-petition or only deal with the Debtor on COD terms.

---

[1] Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the First Declaration.

Silver Service Refreshment

7.    In the ordinary course of operating its food service business and operating the Debtor's restaurant 24 hours per day and 7 days per week, the Debtor relies on the continuous supply of coffee and coffee products. Silver Service Refreshment ("**Silver Service**") provides all coffee and coffee related products the Debtor relies on to operate its business.

8.    Since the Petition Date, Silver Service contacted me and indicated that it will not supply the Debtor with post-petition services without payment of its pre-petition claim or will only deal with the Debtor on COD terms. Accordingly, I believe it is in the best interests of the Debtor and all of its creditors that the Debtor obtain authority to pay Silver Service as a critical vendor in the ordinary course of business, including those invoices that request payment on account of and based upon prepetition activity. Without doing so, there is a substantial risk that Silver Service will either fail to supply the Debtor post-petition or only deal with the Debtor on COD terms.

Great Buns Bakery

9.    Great Buns Bakery ("**Great Buns**") is the Debtor's main bread vendor and the Debtor relies on the continuous supply of bread and bread products to operate its business.

10.   Since the Petition Date, Great Buns contacted me and indicated that its post-petition balance is approximately $4,100, not $3,500 as indicated in the Critical Vendors Motion. Great Buns is aware of the Critical Vendors Motion, but indicated that if it is not approved as a critical vendor, it will not supply the Debtor with post-petition services without payment of its pre-petition claim. Accordingly, I believe it is in the best interests of the Debtor and all of its creditors that the Debtor obtain authority to pay Great Buns as a critical vendor in the ordinary course of business, including those invoices that request payment on account of and based upon prepetition activity. Without doing

so, there is a substantial risk that Great Buns will either fail to supply the Debtor post-petition or only deal with the Debtor on COD terms.

Desert Gold Foods

11.     Desert Gold Foods ("**Desert Gold**") is the food and sauce supply vendor relied on by the Debtor to continuously supply products to operate its business.

12.     Since the Petition Date, contacted me and demanded payment. It also indicated that it will not supply the Debtor with post-petition services without payment of its pre-petition claim. Accordingly, I believe it is in the best interests of the Debtor and all of its creditors that the Debtor obtain authority to pay Desert Gold as a critical vendor in the ordinary course of business, including those invoices that request payment on account of and based upon prepetition activity. Without doing so, there is a substantial risk that Desert Gold will either fail to supply the Debtor post-petition or only deal with the Debtor on COD terms.

Southern Wine and Spirits

13.     In the ordinary course of operating its food service business, the Debtor orders and receives a wide array of beer and alcohol services that are critical to the normal and efficient operation of its business. Southern Wine and Spirits ("**Southern Wine**") provides beer and alcoholic beverage services the Debtor relies on to operate its business.

14.     Since the Petition Date, Southern Wine has cut off service to the Debtor and indicated it will not supply the Debtor with post-petition services without payment of its pre-petition claim. Accordingly, I believe it is in the best interests of the Debtor and all of its creditors that the Debtor obtain authority to pay Southern Wine as a critical vendor in the ordinary course of business, including those invoices that request payment on account of and based upon prepetition activity. Without doing

so, there is a substantial risk that Southern Wine will either fail to supply the Debtor post-petition or only deal with the Debtor on COD terms.

15. I believe the failure to pay the above Critical Vendors' claims could require the Debtor to incur higher costs for such goods or services post-petition if it has to procure the same from alternative sources or on less favorable terms than those existing as of the Petition Date. The failure to pay the Critical Vendors may cause the Debtor to lose sales or future revenues or comply with existing commitments to provide services and goods to its restaurant patrons.

16. None of the Critical Vendors have indicated they will accept the posting of a letter of credit to assure them of future payment and I believe paying the Critical Vendors will allow the Debtor's business operations to continue, which in turn, will allow the Debtor to generate the necessary revenues to facilitate a successful reorganization.

17. If the Debtor were required to replace the Critical Vendors as vendors, such an effort would consume a significant amount of management's time, distract management from focusing on proposing and developing a plan of reorganization, and possibly cost the estate substantially more than simply paying the Critical Vendors to ensure that the Debtor's business functions during the Chapter 11 Case with few distractions and disruptions.

18. If the Debtor sought alternative suppliers, the process would be severely disruptive to the business operations, at a time when profit margins in the industry are already extremely thin. If the Debtor were to cease business operations, even for a short time due to the lack of product to sell, the Debtor would be irreparably harmed. Therefore, it is essential that the Debtor be authorized to pay the Critical Vendors in order to preserve the value of the Debtor's assets and continue to operate its business with minimal disruption.

**Bank Accounts Motion**

19. In my First Declaration, I indicated that the Debtor has six bank accounts, three at Chase Bank and three at Bank of America. The Debtor, however, no longer routinely uses the three bank accounts at Chase Bank.

20. The three accounts at Bank of America are used for: (i) business operations; (ii) payroll; and (iii) reserve account for taxes and similar payments. These three accounts are essential to the Debtor's business, all of which are used by the Debtor to deposit, withdraw, and otherwise transfer funds to and from these bank accounts.

21. As the Debtor operates a 24-7 restaurant with 165 employees, it is necessary that the Debtor be allowed to continue to operate these accounts and eventually designate them as debtor-in-possession accounts in the normal course of business. This will allow the Debtor to enjoy a seamless transition into its Chapter 11 case.

**Schedules Motion**

22. In my First Declaration, I indicated that the Debtor filed its Chapter 11 case on an emergency basis and had not been afforded the opportunity to properly prepare a Chapter 11 filing. Specifically, the Debtor filed on an emergency basis because the Nevada Department of Taxation indicated it would shut down the Debtor's business on July 18, 2014.

23. Prior to the Petition Date, I was not able to devote the time necessary to assemble the information necessary to complete the Debtor's schedules and statements. Specifically, shortly before the Petition Date, my wife and dog, while out on a walk, were attacked by another dog which resulted in the death of my dog and multiple injuries to my wife. This traumatic experience caused me to devote substantial time to my wife and family.

24. Subsequent to the Petition Date, I have not been able to devote the time necessary to assemble the documents needed to complete the schedules and statements as the initial transition into bankruptcy has constantly demanded the majority of my time. I have and am currently dealing with several issues relating to employees, vendors and other issues necessary to stabilize the Debtor's business as it makes the transition into its Chapter 11 case. I have also devoted significant time to the Debtor's cash collateral budget and other first day pleadings.

25. I believe the request for an additional thirty-one days (or forty-five days from the Petition Date) to complete the Debtor's schedules and statements is reasonable under the circumstances. Assuming the Debtor is able to make a smooth transition into its Chapter 11 case, I believe the Debtor will be able to complete and file its schedules and statements by August 31, 2014.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 24th day of July, 2014.

/s/ Carl Halvorson
_____
Carl Halvorson, Manager of
Bistro Central, LV LLC